# EXHIBIT A

# STATE COURT COMPLAINT

EFILED IN OFFICE
CLERK OF SUPERIOR COURT
MONROE COUNTY, GEORGIA

**SUCV2022000054**

FEB 07, 2022 08:38 AM

Lindsey Taylor, Clerk
Monroe County, Georgia

IN THE SUPERIOR COURT OF MONROE COUNTY
STATE OF GEORGIA

| | |
|---|---|
| DANNY FLEMING;  ) <br> KIMBERLY HAMMOND;  ) <br> STEPHEN HAMMOND;  ) <br> DAVID JOHNSON;  ) <br> RHONDA STOWE; and  ) <br> STEVEN STOWE, SR.,  ) <br>   ) <br> Plaintiffs,  ) <br>   ) <br> vs.  ) <br>   ) <br> GEORGIA POWER COMPANY,  ) <br>   ) <br> Defendant. | CIVIL ACTION FILE <br> NO. _____ <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs are residents and owners of property in Monroe County, Georgia who live near Robert W. Scherer Electric Generating Plant ("Plant Scherer"). Defendant Georgia Power Company ("Defendant" or "Georgia Power") owns and operates Plant Scherer, the most powerful coal-fired power plant in North America. The plant is a known and extreme polluter. The plant's operations rely on a pond that stores over 15 million tons of toxic coal ash. The pond is unlined. Thus, the coal ash leaches into the groundwater that flows straight to Plaintiffs' properties.

Plaintiffs hereby file this Complaint seeking damages against Georgia Power Company for its wrongful acts that have caused property damage to Plaintiffs, showing the Court as follows:

## INTRODUCTION

1.  This action for damages arises out of Georgia Power's prior and continuing release, discharge, and deposit of toxins into the groundwater and air that has caused property damage to Plaintiffs.

2. Georgia Power unlawfully discharges toxins from coal ash into the air and an unlined pond located at Plant Scherer, which leads to the release and migration of pollutants into the groundwater and air on Plaintiffs' properties.

## PARTIES

3. Plaintiffs are owners of residential property located in Monroe County, Georgia.

4. Danny Fleming is, and was at all times relevant, a citizen of the state of Georgia, residing in Monroe County at 213 JH Aldridge Drive, Juliette, Georgia 31046.

5. Danny Fleming owns the property located at 213 JH Aldridge Drive, Juliette, Georgia 31046.

6. Kimberly Hammond is, and was at all times relevant, a citizen of the state of Georgia, residing in Monroe County at 156 Marvin Circle, Juliette, Georgia 31046.

7. Kimberly Hammond owns the property located at 156 Marvin Circle, Juliette, Georgia 31046.

8. Stephen Hammond is, and was at all times relevant, a citizen of the state of Georgia, residing in Monroe County at 156 Marvin Circle, Juliette, Georgia 31046.

9. Stephen Hammond owns the property located at 156 Marvin Circle, Juliette, Georgia 31046.

10. David Johnson is, and was at all times relevant, a citizen of the state of Georgia, residing in Monroe County at 11671 GA-Hwy 87, Juliette, Georgia 31046.

11. David Johnson owns the property located at 11671 GA-Hwy 87, Juliette, Georgia 31046.

12. Rhonda Stowe is, and was at all times relevant, a citizen of the state of Georgia, residing in Monroe County at 701 Nature's Trail, Forsyth, Georgia 31029.

13. Rhonda Stowe owns the property located at 701 Nature's Trail, Forsyth, Georgia 31029.

14. Steven Stowe, Sr. is, and was at all times relevant, a citizen of the state of Georgia, residing in Monroe County at 701 Nature's Trail, Forsyth, Georgia 31029.

15. Steven Stowe, Sr. owns the property located at 701 Nature's Trail, Forsyth, Georgia 31029.

16. Georgia Power Company is a corporation formed under the laws of the State of Georgia, and whose principal office address is 241 Ralph McGill Boulevard NE, Atlanta, Fulton County, Georgia 30308.

17. Georgia Power has owned and operated Plant Scherer, located in Juliette, Georgia, Monroe County, during all times relevant to the matters described and claims asserted in this Complaint.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction of this action and has personal jurisdiction over Defendant in this action.

19. Venue is proper in this Court.

## FACTUAL BACKGROUND

### Plant Scherer

20. Georgia Power owns and operates Plant Scherer, a 12,000-acre coal-fired power plant located in Juliette, Georgia.

21. Plant Scherer is named after Robert W. Scherer, a former chairman and chief executive officer of Georgia Power.

22. Plant Scherer consists of four units, each with a rated capacity of 945 megawatts.

3

23. The first unit was brought online in 1982. The other units were brought online in 1984, 1987, and 1989, respectively.

24. Plant Scherer is the most powerful coal-fired power plant in North America. It is the fourth-largest electric generating plant in the United States, and the largest to be fueled exclusively by coal, according to the U.S. Energy Information Administration.

25. According to the U.S. Environmental Protection Agency, Plant Scherer is the top single emitter of Greenhouse Gas emissions among all United States power plants, averaging over 20 million tons per year through at least 2018.

26. Plant Scherer burns coal for the purpose of generating energy. Lake Juliette, a man-made lake built by Georgia Power, provides water to make steam, which generates the electricity. Coal is burned to heat the water into steam.

27. Georgia Power purchases coal for use at Plant Scherer from the Powder River Basin in Wyoming.

28. Coal from the Powder River Basin contains toxic elements. It is known in the industry as the cheapest and dirtiest coal available.

**Coal ash**

29. Georgia Power generates large quantities of coal ash when it burns coal to generate energy at Plant Scherer.

30. Coal ash, also referred to as coal combustion residuals or CCRs, is produced primarily from the burning of coal in coal-fired power plants. Coal ash includes a number of by-products produced from burning coal, including fly ash, bottom ash, boiler slag, and flue gas desulfurization material. This Complaint uses the term "coal ash" to refer to all the material mentioned in this paragraph.

31. Coal ash contains materials that are known carcinogens and neurotoxins.

32. The risks to humans associated with exposure to these toxins from coal ash include elevated probabilities of cancer, neurological and psychiatric effects, cardiovascular effects, immune system damage, liver damage, kidney damage, decreased thyroid function, birth defects, developmental disabilities, respiratory system effects, damage to blood vessels, anemia, skin disorders, bone sarcomas, carcinomas of the paranasal sinuses and mastoid process, and other acute and chronic toxic reactions.

**Coal Ash Pond**

33. Georgia Power disposes of Plant Scherer's coal ash in, among other places, a 776-acre pond located on the campus of Plant Scherer ("Coal Ash Pond").

34. The Coal Ash Pond is unlined and contains roughly 15.7 million tons of coal ash, much of which is located beneath the groundwater table, which is the area from which groundwater flows.

35. The Coal Ash Pond is located in close proximity to the Plaintiffs' residences.

36. Coal ash left in unlined basins, such as the Coal Ash Pond at Plant Scherer, is likely to leach toxins into the groundwater.

37. Coal ash has and continues to leach from the Coal Ash Pond.

38. This leaching occurs via groundwater infiltrating the unlined basin of the Coal Ash Pond.  The groundwater flow carries the toxins from the coal ash to the groundwater on the properties where Plaintiffs live.

**The location of Georgia Power's monitoring wells evades representative results**

39. Georgia Power has set up various monitoring wells supposedly to monitor water conditions as a result of the operation of Plant Scherer, including the use of the Coal Ash Pond.

But the locations of these wells and the depth of the well screens are insufficient to properly monitor contaminants leaching from the unlined Coal Ash Pond to the groundwater.

40. The monitoring wells are located horizontally adjacent to the Coal Ash Pond, but groundwater flow is vertical from the Coal Ash Pond to the bedrock aquifer, which is the underground rock through which groundwater travels to reach streams, lakes, rivers, and Plaintiffs' wells.

41. The monitoring well screens, which are filters that allow water to enter the pipes, are placed above the bedrock aquifer. Thus, they are not within the flow from the Coal Ash Pond.

42. Well screens would need to be located below 380 feet mean sea level (MSL) to properly detect groundwater contaminant plumes generated by toxins leaching from the Coal Ash Pond. All of Georgia Power's well screens are above the minimum elevation of 380 MSL.

### Contamination of Plaintiffs' water and air

43. Since the inception of Plant Scherer and the Coal Ash Pond, and continuing today, Georgia Power has owned and operated Plant Scherer in such a negligent, reckless, and otherwise unlawful manner so as to allow, through its acts and omissions, the discharge, release, seepage, deposit, and emission of toxins into Plaintiffs' well water, air, and otherwise onto their properties.

44. Georgia Power has and continues to unlawfully release, discharge, and deposit toxins from the Coal Ash Pond at Plant Scherer into the local well water used by Plaintiffs and/or onto Plaintiffs' properties.

45. Georgia Power's operation of Plant Scherer creates harmful air emissions of toxins that impact properties in Juliette and Forsyth, Georgia including through contamination by shallow soil deposits during rain events.

46. Unsafe levels of toxins from Plant Scherer are present in the Plaintiffs' well water.

47. The detected toxins in the well water and groundwater are the result of contamination from Georgia Power operations at Plant Scherer.

48. Plaintiffs obtain their drinking water from the groundwater wells where unsafe levels of contaminants are found. Plaintiffs also use water from these wells to cook, clean, water their gardens and lawns, and in other household activities.

49. Plaintiffs' properties have been exposed, and continue to be exposed, to the toxins created by Georgia Power's operations at Plant Scherer.

50. Georgia Power provided Plaintiffs no warning that activity from Plant Scherer and the existence of the unlined Coal Ash Pond regularly exposed, and continue to expose, Plaintiffs' properties to toxic substances.

51. In fact, Georgia Power has made affirmative statements that the operations at Plant Scherer and its use of the Coal Ash Pond do not pose any danger.

52. Georgia Power has made affirmative statements that the operations at Plant Scherer do not affect the groundwater of Monroe County, Georgia residents.

53. The release, discharge, and deposits of toxins into the environment and onto Plaintiffs' properties was foreseeable and preventable. Georgia Power knowingly released, discharged, and deposited toxins into the environment and was aware that in so doing, it was likely injuring local residents' properties, such as Plaintiffs' properties.

54. The discharges, releases, and deposits caused by the acts and omissions of Georgia Power have caused Plaintiffs, their well water, and their residences to be exposed to highly toxic and hazardous coal ash and have caused damage to the natural resources and environment in and around Plaintiffs' residences.

55. As a result of Georgia Power's releases, discharges, and deposits of toxic and hazardous substances into the areas surrounding Plant Scherer, Plaintiffs have suffered injuries to their property.

## COUNT I – NEGLIGENCE

56. Plaintiffs adopt and incorporate the preceding paragraphs above as if fully restated herein.

57. O.C.G.A. § 44-8-1 places an affirmative duty on landowners concerning running water, such that a landowner may not "use or adulterate it as to interfere with the enjoyment of it by the next owner."

58. Defendant was negligent as a landowner by adulterating groundwater through the disposal of toxic and hazardous materials and other Plant Scherer operations so as to interfere with the enjoyment of groundwater and air by other owners, including Plaintiffs.

59. Defendant was and is negligent in the method by which it disposes of coal ash at Plant Scherer.

60. Defendant was negligent in the construction of the Coal Ash Pond by failing to install a liner in spite of the significant known risk that left unlined, the Coal Ash Pond could release, discharge, and deposit pollutants through groundwater running beneath or through Plant Scherer to other landowners and residents such as Plaintiffs.

61. Defendant was negligent in the use and maintenance of the Coal Ash Pond by dumping millions of tons of coal ash there and causing the toxic concentration of leachate that far exceeds safe levels.

62. Defendant was and is negligent in the maintenance of the Coal Ash Pond by allowing significant discharge of coal ash pollutants therefrom into the groundwater located in the vicinity of Plant Scherer.

63. Defendant knew or should have known that its activities would have toxic, poisonous, and highly deleterious effects upon properties in the area surrounding Plant Scherer.

64. Defendant breached its duty to Plaintiffs by disposing of toxic materials in the unlined Coal Ash Pond and allowing toxic and hazardous material to contaminate the natural resources of nearby residents, which Defendant knew, or should have known, would foreseeably cause damage to Plaintiffs' properties.

65. Defendant recklessly and negligently failed and/or refused to provide accurate and adequate warnings of the hazards and dangers of exposure to coal ash and other toxins to Plaintiffs.

66. Defendant recklessly and negligently failed to fully and properly test, analyze, and study the constituents of the coal ash and other toxins so as to fully understand the hazards associated with disposing these materials in the unlined Coal Ash Pond.

67. Defendant, as property owner and operator of Plant Scherer, has a duty to use its land in a manner that does not injure other landowners.

68. Defendant has breached this duty by failing to maintain the property at Plant Scherer in a manner that would not result in ongoing damage to Plaintiffs' properties and their property rights.

69. Defendant has breached this duty by failing to manage pollutant discharges and other toxins in a manner that does not cause damage to Plaintiffs' properties and their property rights.

70. Defendant's failure to maintain its property and its actions and/or omissions in the course of the operation, maintenance, development, and/or construction activities at Plant Scherer has resulted in the severe adulteration and degradation of waters which flow onto Plaintiffs' properties and into the watercourses located thereon and thereby interfere with Plaintiffs' traditional recreational, aesthetic, and residential uses of their properties.

71. Defendant's activities as alleged herein are a cause in fact and a proximate cause of the damages which Plaintiffs have suffered.

72. As a result of Defendant's negligence, Plaintiffs have suffered property damages, including but not limited to invasions of their properties, loss of the use and enjoyment of their properties, diminution of value of their property, and restoration costs of returning their properties to their original states.

73. As a result of Defendant's foregoing acts and omissions, Plaintiffs have incurred special damages, including diminution of value and the cost of restoration and repair of Plaintiffs' properties. The damage to Plaintiffs' properties is ongoing. Accordingly, Plaintiffs' total special damages are in an amount to be proven at trial.

74. Plaintiffs are also entitled to be compensated for nominal damages and their annoyance, inconvenience, and loss of use and enjoyment of their properties resulting from Defendant's actions as alleged herein in an amount to be determined by the enlightened conscience of the jury.

## COUNT II – NEGLIGENT FAILURE TO WARN

75. Plaintiffs adopt and incorporate the preceding paragraphs above as if fully restated herein.

76. At all times relevant to the matters described herein, Defendant has owned, operated, and exercised exclusive control over the operations of Plant Scherer.

77. Defendant's operation of Plant Scherer includes the generation of large quantities of coal ash, which contain toxins that pose significant dangers and risks to Plaintiffs' properties.

78. Defendant knew or should have known that disposal of large quantities of coal ash in the Coal Ash Pond, which remains unlined to date, would leach toxins into the groundwater on Plaintiffs' properties.

79. Given the likelihood of contamination arising from Defendant's reckless and negligent creation and operation of Plant Scherer and the Coal Ash Pond, Defendant had a duty to investigate the extent of the discharge, release, seepage, deposit, and emission of pollutants into Plaintiffs' groundwater and warn Plaintiffs of such toxic exposures.

80. At all times relevant, unsafe levels of toxic contaminants were in Plaintiffs' groundwater.

81. Defendant breached its duty to Plaintiffs by providing no warnings that releases, discharges, and deposits from Plant Scherer and the Coal Ash Pond regularly exposed, and continue to expose, Plaintiffs' properties to toxins.

82. Any adequate warning would have minimized, reduced, and/or avoided the foreseeable and preventable risk of harm posed by Defendant's reckless and negligent creation and operation of Plant Scherer and the Coal Ash Pond.

83. If Defendant provided adequate warnings, Plaintiffs could have taken necessary steps to prevent further harm and exposure to the unsafe levels of toxic contaminants found in Plaintiffs' well and groundwater.

84. Defendant recklessly and negligently failed and/or refused to provide accurate and adequate warnings of the hazards and dangers of exposure to coal ash and other toxins to Plaintiffs' properties, which would reasonably and foreseeably come into contact with or be harmed by the toxins.

85. Defendant's failures, actions, and/or omissions at Plant Scherer and the Coal Ash Pond are a cause in fact and a proximate cause of Plaintiffs' damages.

86. As a result of Defendant's foregoing acts and omissions, Plaintiffs have incurred special damages, including diminution of value and the cost of restoration and repair of Plaintiffs' properties. The damage to Plaintiffs' properties is ongoing. Accordingly, Plaintiffs' total special damages are in an amount to be proven at trial.

87. Plaintiffs are also entitled to be compensated for nominal damages and their annoyance, inconvenience, and loss of use and enjoyment of their properties resulting from Defendant's actions as alleged herein in an amount to be determined by the enlightened conscience of the jury.

**COUNT III – NUISANCE**

88. Plaintiffs adopt and incorporate the preceding paragraphs above as if fully restated herein.

89. The dumping of coal ash and other operations at Plant Scherer have resulted in discharges of toxic substances into the area surrounding Plant Scherer, including into the groundwater and air on Plaintiffs' properties.

90. These discharges have resulted and continue to result in the contamination and accumulation of toxins on Plaintiffs' properties.

91. As a result, Plaintiffs have suffered injuries to their property.

92. Plaintiffs are entitled to the full use and enjoyment of their properties free from pollutant discharges caused by Defendant. The ongoing discharges of pollutants have and are continuing to unreasonably and substantially interfere with Plaintiffs' use and enjoyment of their properties.

93. The ongoing discharges of pollutants have caused and are continuing to cause Plaintiffs to suffer hurt, inconvenience, and/or damage within the meaning of O.C.G.A. § 41-1-1.

94. The ongoing discharges constitute a continuing abatable nuisance, pursuant to O.C.G.A. § 41-1-5, for which Defendant is responsible.

95. Because Defendant created the nuisance, Plaintiffs are not required to give Defendant notice to abate the nuisance before filing this action.

96. The nuisance caused by Defendant is an actual and proximate cause of Plaintiffs' damages and injuries.

97. Plaintiffs' properties have been negatively impacted by Defendant's creation of and failure to abate the nuisance.

98. Defendant's use and maintenance of Plant Scherer, as described above, constitutes a nuisance. It is offensive to Plaintiffs' senses, so as to obstruct the free use of Plaintiffs' properties and interferes with Plaintiffs' comfortable enjoyment of life.

99. As a proximate result of the nuisance created and maintained by Defendant, the Plaintiffs have suffered property damages in an amount to be determined at trial.

100. Plaintiffs' properties have been diminished and continue to diminish in value as a proximate result of the nuisance created by Defendant in an amount to be determined at trial.

101. As a result of Defendant's foregoing acts and omissions, Plaintiffs have incurred special damages, including diminution of value and the cost of restoration and repair of Plaintiffs' properties. The damage to Plaintiffs' properties is ongoing. Accordingly, Plaintiffs' total special damages are in an amount to be proven at trial.

102. Plaintiffs are also entitled to be compensated for nominal damages and their annoyance, inconvenience, and loss of use and enjoyment of their properties resulting from Defendant's actions as alleged herein in an amount to be determined by the enlightened conscience of the jury.

## COUNT IV – TRESPASS

103. Plaintiffs adopt and incorporate the preceding paragraphs above as if fully restated herein.

104. Plaintiffs own and possess the properties identified in Paragraphs 4 through 15.

105. The failure by Defendant to properly construct and maintain the Coal Ash Pond and Defendant's creation and operation of Plant Scherer have caused coal ash pollutants and other toxins to enter Plaintiffs' properties.

106. The unpermitted invasions of Plaintiffs' properties have resulted in the deterioration of Plaintiffs' properties and the air and well water located thereon.

107. Plaintiffs neither invited nor authorized Defendant's discharge of pollutants onto, over, and through their properties.

108. Defendant's ongoing discharges of pollutants on Plaintiffs' properties have interfered with Plaintiffs' rights to the exclusive possession, control, and use of their properties, and constitute trespass.

109. As a result of these trespasses, Plaintiffs have suffered and continue to suffer damages for their inability to exclusively possess their properties and for the restoration of their properties to their original state.

110. Plaintiffs have suffered property damages in an amount to be proven at trial.

111. As a result of Defendant's foregoing acts and omissions, Plaintiffs have incurred special damages, including diminution of value and the cost of restoration and repair of Plaintiffs' properties.  The damage to Plaintiffs' properties is ongoing.  Accordingly, Plaintiffs' total special damages are in an amount to be proven at trial.

112. Plaintiffs are also entitled to be compensated for nominal damages and their annoyance, inconvenience, and loss of use and enjoyment of their properties resulting from Defendant's actions as alleged herein in an amount to be determined by the enlightened conscience of the jury.

113. Further, because Defendant's trespass is both continuing and preventable, Plaintiffs are entitled to recover both monetary damages from continuing the trespass.

**COUNT V – ATTORNEY'S FEES AND COSTS**

114. Plaintiffs adopt and incorporate the preceding paragraphs above as if fully restated herein.

115. Pursuant to O.C.G.A. § 13-6-11, Defendant has acted in bad faith, has been stubbornly litigious, and/or has caused the Plaintiffs unnecessary trouble and expense, for which

Plaintiffs are entitled to recover their expenses of litigation, including reasonable attorney's fees and expenses, from Defendant.

116. Because Defendant has failed and refused to abate the unlawful conditions on Plaintiffs' properties, Plaintiffs were forced to incur attorney's fees and expenses in an effort to resolve this matter. Plaintiffs will be forced to incur additional attorney's fees and expenses unless and until Defendant ceases and abates its unlawful and illegal use, occupation, and possession of Plaintiffs' properties.

## COUNT VI – PUNITIVE DAMAGES

117. Plaintiffs adopt and incorporate the preceding paragraphs above as if fully restated herein.

118. Defendant knew of the defects in and its defective maintenance of the Coal Ash Pond, but willfully ignored them, concealed them from Plaintiffs, and failed to warn Plaintiffs about the scope of the defects, intentionally and willingly exposing Plaintiffs to toxic materials.

119. Defendant made false and/or reckless statements about the Coal Ash Pond, including denying that the toxic materials were leaching onto Plaintiffs' properties and into Plaintiffs' well water with the specific intent to induce Plaintiffs to refrain from taking action requiring Defendant to remediate the problem.

120. Defendant's fraudulent and malicious behavior towards Plaintiffs constitutes a pattern of bad faith conduct wherein to make money and avoid lawsuits, Defendant deliberately conceals the known hazard its operation presents to residents in the surrounding area, such as unmitigated pollution of Plaintiffs' properties and well water.

121. The actions and inactions of Defendant demonstrates willful misconduct, failure to warn, collusion, fraudulent concealment, malice, fraud, fraudulent inducement, wantonness,

oppression, or that entire want of care that would raise the presumption of a conscious indifference to consequences, for which Plaintiffs seek punitive damages pursuant to O.C.G.A. § 51-12-5.1.

122. The actions and inactions of Defendant demonstrates a specific intent to cause the intended harm authorizing punitive damages in excess of $250,000 pursuant to O.C.G.A. § 51-12-5.1.

**WHEREFORE**, Plaintiffs pray for the following relief against Georgia Power:

a. General and special damages for current and ongoing property damages;

b. Punitive damages in excess of $250,000;

c. Trial by jury with respect to all issues triable to a jury;

d. All costs and attorney's fees associated with the prosecution of this action;

e. Interest on the judgment at the maximum rate allowed by law; and

f. Such other and further relief as the Court deems just and proper.

Respectfully submitted, this 7th day of February 2022.

| **STACEY EVANS LAW** | **ADAMS LAW FIRM** |
|---|---|
| **/s/ Stacey Godfrey Evans** | **/s/ Brian P. Adams** |
| | Brian P. Adams |
| Stacey Godfrey Evans | Georgia Bar No. 142474 |
| Georgia Bar No. 298555 | Mary Beth Hand |
| Tiffany N. Watkins | Georgia Bar No. 322836 |
| Georgia Bar No. 228805 | |
| John Amble Johnson | 598 D.T. Walton Sr. Way |
| Georgia Bar No. 229112 | Macon, GA 31201 |
| | Telephone: 478-238-0231 |
| 4200 Northside Parkway, NW | Facsimile: 478-216-9188 |
| Bldg One; Suite 200 | brian@brianadamslaw.com |
| Atlanta, Georgia 30327 | mbhand@brianadamslaw.com |
| Telephone: 770-779-9602 | |
| Facsimile:  404-393-2828 | |
| sevans@staceyevanslaw.com | |
| twatkins@staceyevanslaw.com | |

ajohnson@staceyevanslaw.com

**CONLEY GRIGGS PARTIN LLP**

**/s/ Cale H. Conley**
Cale H. Conley
Georgia Bar No. 181080
James T. Cox
Georgia Bar No. 296191

4200 Northside Parkway, N.W.
Building One, Suite 300
Atlanta, Georgia 30327-3007
Phone: 404-467-1155
Fax: 404-467-1166
cale@conleygriggs.com
james@conleygriggs.com

*Counsel for Plaintiffs*