# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| DANNY FLEMING, KIMBERLY HAMMOND, DAVID JOHNSON, RHONDA STOWE, and STEVEN STOWE. SR., <br><br> *Plaintiffs,* <br> v. <br><br> GEORGIA POWER COMPANY, <br><br> *Defendant.* | Civil Action No. 5:22-cv-00101 |
| HOUSTON KYLE CASS, <br><br> *Plaintiff,* <br> v. <br><br> GEORGIA POWER COMPANY, <br><br> *Defendant.* | Civil Action No. 5:22-cv-00102 |
| STEVEN STOWE, JR., <br><br> *Plaintiff,* <br> v. <br><br> GEORGIA POWER COMPANY, <br><br> *Defendant.* | Civil Action No. 5:22-cv-00103 |
| JUDDIE SANDS, <br><br> *Plaintiff,* <br> v. <br><br> GEORGIA POWER COMPANY, <br><br> *Defendant.* | Civil Action No. 5:22-cv-00104 |

# GEORGIA POWER COMPANY'S RESPONSE TO PLAINTIFFS' MOTIONS FOR REMAND

In a transparent attempt to avoid this Court's original jurisdiction under the Price Anderson Amendments Act of 1988 (the "Price Anderson Act"), Plaintiffs have scrubbed all references to the words "uranium" and "radionuclides" from the Complaints in these cases. The omission of those words, however, changes nothing with respect to the applicability of the Price Anderson Act's original jurisdiction. The overall context in which these cases were filed makes clear that these Plaintiffs, like their neighbors in related lawsuits, allege injuries from exposure to the hazardous, toxic, and radioactive properties of uranium.

Per the Court's request, this Response addresses only Plaintiffs' contention that their removal of the words "uranium" and "radionuclides" from their Complaints means that the Price Anderson Act is no longer applicable. Georgia Power relies on its briefing in related cases *Cansler, et al. v. Georgia Power Company*, M.D. Ga. Case No. 5:21-cv-00401; *Bowdoin, et al. v. Georgia Power Company*, M.D. Ga Case No. 5:21-cv-00402; and *Quinn v. Georgia Power Company*, M.D. Ga. Case No. 5:21-cv-00403 (the "Monroe I Cases") to respond to Plaintiffs' remaining arguments in sections (1), (3), (4), and (5) of their Motions for Remand.

## ARGUMENT

### I. Plaintiffs' Disingenuous Pleading Cannot Eliminate Federal Court Jurisdiction.

Approximately three months after Georgia Power removed the Monroe I Cases to this Court, Plaintiffs filed the four cases at issue in this removal. These Plaintiffs live in the same Juliette, Georgia community as the individuals who filed the Monroe I Cases (and the earlier-filed *Arwood* litigation that remains pending in Fulton County Superior Court[1]). Moreover, they assert

---

[1] *Arwood et al. v. Georgia Power*, Fulton Cty. Sup. Ct. Case No. 2020CV338805.

the same factual allegations (i.e., Georgia Power's operations at Plant Scherer "polluted" my drinking water and air), the same types of injuries (personal injury and/or property damage), and the same alleged causes of injury as the Monroe I Cases (water and air contamination). These newly-filed Complaints are indistinguishable from the Monroe I Cases except in one respect: the words "uranium" and "radionuclides" have disappeared. Plaintiffs have scrubbed all express mentions of exposure to uranium and radioactive compounds from their Complaints, recharacterizing otherwise identical allegations as exposure to "toxic" materials and contaminants, without any reference to uranium and, for that matter, any specific compound whatsoever:

> Georgia Power unlawfully discharges **toxins from coal ash** into the air and an unlined pond located at Plant Scherer, which leads to the release and migration of pollutants into the groundwater and air on the property where Plaintiff lived at all times relevant. *See* Cass Compl. ¶ 2
>
> Coal from the Powder River Basin contains **toxic elements**. It is known in the industry as the cheapest and dirtiest coal available. *Id.* ¶ 18
>
> Coal ash contains materials that are known carcinogens and neurotoxins. *Id.* ¶ 21
>
> Coal ash left in unlined basins, such as the Coal Ash Pond at Plant Scherer, is likely to leach **toxins** into the groundwater. *Id.* ¶ 26
>
> Georgia Power's operation of Plant Scherer creates harmful air emissions of **toxins** that impact residents in Juliette and Forsyth, Georgia (including Plaintiff) through inhalation and contamination by shallow soil deposits during rain events. *Id.* ¶ 35
>
> Unsafe levels of **toxins** from Plant Scherer are present in the well water on the property where Plaintiff lived at all times relevant. *Id.* ¶ 36
>
> The detected **toxins** in the well water are the result of contamination from Georgia Power operations at Plant Scherer. *Id.* ¶ 37

*See, e.g.*, *Cass* Compl. ¶¶ 2, 18, 21, 26, 35, 36, 37. This scrubbing of uranium and radionuclides must be called out for what it is: a transparent attempt to avoid this Court's jurisdiction under the Price Anderson Act.

The Price Anderson Act is clear that a nuclear incident, which gives rise to a public liability action, takes place when there is "any occurrence. . . causing, within or outside the United States, bodily injury, sickness, disease, or death, or loss or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material." 42 U.S.C. § 2014(q). The term "source material" refers to uranium. *Id.* at § 2014(z)(1). As Georgia Power has explained, the use of the word "uranium" does not automatically confer jurisdiction in this Court. Rather, federal jurisdiction arises where plaintiffs allege injury stemming from exposure to the radioactive, toxic, explosive, or other hazardous properties of source material (here, uranium).

Plaintiffs are pretending that omission of any reference to "uranium" or "radionuclides" from their Complaints magically makes them Price Anderson Act proof. But Plaintiffs overlook the Eleventh Circuit's mandate that courts must "look beyond the labels to the underlying facts of the complaint to evaluate jurisdiction." *Deroy v. Carnival Corp.,* 963 F.3d 1302, 1310 (11th Cir. 2020). This inquiry is required "even when the parties disclaim or fail to present requirements that go to the existence of subject-matter jurisdiction," since federal courts have an independent obligation to consider their jurisdiction *sua sponte*. *Id.* at 1311. The Eleventh Circuit's recent directive in *Deroy* has long been the guiding principle in this district, as espoused in *Wilkinson v. Georgia Power Company*: "a court is entitled to look beyond the wording of the complaint to determine if it has been artfully pleaded to avoid federal jurisdiction." No. 90-120-ALB/AMER(DF), 1992 Dist. LEXIS 12704, at *4 (M.D. Ga. May 28, 1992) (internal citations

omitted). Indeed, "the existence of a federal question depends on the **real nature** of the plaintiff's claim, regardless of how it is characterized." *Id.* at *4 (emphasis added).

Here, the real nature of Plaintiffs' Complaints can be discerned from a simple comparison of the allegations in these Complaints against those asserted in the Monroe I Cases and *Arwood*:

| ***Cass v. Georgia Power Company***, 5:22-cv-00102, Complaint | ***Cansler et al v. Georgia Power Company***, Case 5:21-cv-00401, Complaint (Monroe I Case); ***Arwood et al v. Georgia Power Company***, Fulton Cty. Sup. Ct. Case No. 2020CV338805[2] |
|---|---|
| Georgia Power unlawfully discharges **toxins** from coal ash into the air and an unlined pond located at Plant Scherer, which leads to the release and migration of pollutants into the groundwater and air on the property where Plaintiff lived at all times relevant. Cass Compl. ¶ 2 | Georgia Power exacerbated and continued its pollution activities by unlawfully discharging **toxic heavy metals and radionuclides** from coal ash into the air and an unlined pond located at Plant Scherer, which led to the release and migration of pollutants into the groundwater and air on Plaintiffs' properties. Cansler Compl. ¶ 3; Arwood Compl. ¶ 3 |
| Coal from the Powder River Basin contains **toxic elements**. It is known in the industry as the cheapest and dirtiest coal available. ¶ 18 | Coal from the Powder River Basin contains elements that include **toxic heavy metals and radionuclides**. It is known in the industry as the cheapest and dirtiest coal available. Cansler Compl. ¶ 36; Arwood Compl. ¶ 64 |
| Coal ash contains materials that are **known carcinogens and neurotoxins**. ¶ 21 | Coal ash contains materials that are **known carcinogens and neurotoxins**, including, but not limited to, arsenic, barium, boron, cadmium, chromium VI (hexavalent chromium), copper, **gross alpha and beta emissions**, lead, lithium, manganese, mercury, molybdenum, nickel, **radium**, **radon**, selenium, thallium, and **uranium**. Cansler Compl. ¶ 39; Arwood Compl. ¶ 67 |
| Coal ash left in unlined basins, such as the Coal Ash Pond at Plant Scherer, is likely to leach **toxins** into the groundwater. ¶ 26 | Coal ash left in unlined basins, such as the Coal Ash Pond at Plant Scherer, is likely to leach **toxic metals and radionuclides** into the groundwater. Cansler Compl. ¶ 44; Arwood Compl. ¶ 72 |
| Well screens would need to be located below 380 feet mean sea level (MSL) to properly detect groundwater contaminant plumes generated by **toxins** leaching from the Coal Ash Pond. All of Georgia Power's well screens | Well screens would need to be located below 380 feet mean sea level (MSL) to properly detect groundwater contaminant plumes generated by **toxic metals and radionuclides** leaching from the Coal Ash Pond. All of Georgia Power's well |

---

[2] The *Arwood* Complaint is attached hereto as **Exhibit A**.

| | |
|---|---|
| are above the minimum elevation of 380 MSL. ¶ 32 | screens are above the minimum elevation of 380 MSL. Cansler Compl. ¶ 50; Arwood Compl. ¶ 78 |
| Georgia Power's operation of Plant Scherer creates harmful air emissions of **toxins** that impact residents in Juliette and Forsyth, Georgia (including Plaintiff) through inhalation and contamination by shallow soil deposits during rain events. ¶ 35 | Georgia Power's operation of Plant Scherer creates harmful air emissions of **uranium**, **radionuclides**, chromium, cadmium, vanadium, cobalt, strontium, boron, and nickel, which impacts properties in Juliette and Forsyth, Georgia including through contamination by shallow soil deposits during rain events. Cansler Compl. ¶ 61; Arwood Compl. ¶ 89 |
| Unsafe levels of **toxins** from Plant Scherer are present in the well water on the property where Plaintiff lived at all times relevant. ¶ 36 | Toxins from Plant Scherer are present in the Plaintiffs' well water above the U.S. Environmental Protection Agency's maximum contaminant levels and tap water screening levels, including, but not limited to lithium, **uranium**, chromium VI (hexavalent chromium), **gross alpha radiation, gross beta particle activity, radium-226, radium-228, and radon-222**. Arwood Compl. ¶ 90<br><br>Unsafe levels of toxins from Plant Scherer are present in Plaintiffs' well water, including chromium VI (hexavalent chromium). Cansler Compl. ¶ 62. |
| The detected toxins in the well water are the result of contamination from Georgia Power operations at Plant Scherer. ¶ 37 | The detected toxins in the well water and groundwater are the result of contamination from Georgia Power operations at Plant Scherer and Lake Juliette. The contaminants are not naturally occurring constituents in the soils, bedrock, surface streams, and groundwater in Monroe County, with the exception of **uranium**, which until Georgia Power disturbed the environment and changed the pH level, occurred in levels well below the U.S. Environmental Protection Agency's maximum contaminant level for health standards in groundwater. Cansler Compl. ¶ 63; Arwood Compl. ¶ 91 |

Fact discovery in the *Arwood* case reconfirms the "real nature" of these Plaintiffs' Complaints. For example, in *Arwood*, Plaintiffs have requested four weeks' worth of inspection and sampling at Plant Scherer, commencing on May 10, 2022. During that inspection, the *Arwood* plaintiffs intend to collect 52 groundwater samples and 7 surface water samples, all of which will

be analyzed for 40 radioactive compounds, including Uranium, Thorium, several isotopes of Uranium and Thorium, and decay products like Bismuth-214, Lead-214, Radium-226, and Radium-228. *See* **Exhibit B**. Similarly, the Plaintiffs in *Arwood* have had their homes tested for the presence of radon, a decay product of uranium in further support of their claims that uranium has caused them personal injuries and or contaminated their properties. *See* **Exhibit C**. The *Arwood* Plaintiffs also have had their well water tested for Uranium; Thorium; Isotopic Uranium, including U-233, U-234, U-235, U-236, and U-238; Total Uranium as Activity; Isotopic Thorium, including Thorium-228 and Thorium-230; and numerous other radioactive decay products such as Bismuth-212, Bismuth-214, Lead-210, Lead-212, Lead-214, Radium-224, Radium-226, Radium-228, Thorium-232, Thorium-234, among others.[3]

Citing these sampling results, at least eleven *Arwood* Plaintiffs specifically identified uranium and/or specific uranium isotopes as a substance they allege damage or trespassed on their property. *See* **Exhibit D**. Of the 35 *Arwood* Plaintiffs claiming personal injury, all of them allege that their injury was caused, at least in part, by uranium or radionuclides contamination in their drinking water caused by Plant Scherer's operations. *See id.* And 27 (of the 28) Plaintiffs claiming property damage allege that their properties have been contaminated with uranium or radionuclides, again as a result of Plant Scherer's operations. *Id.* In sum, the Plaintiffs in these four, nearly identical lawsuits are asserting claims based on the same Plant Scherer operations at issue in Monroe I Cases – i.e., the hazardous, toxic, and radioactive properties of uranium. Plaintiffs' removal of the word uranium from their Complaints changes nothing; the Price Anderson Act still applies equally to these newly filed cases.

---

[3] Sampling reports recently provided by counsel for all of the Plaintiffs to Georgia Power indicate that at least some of the water wells located on properties in the Monroe I Cases have been analyzed for the same extensive suite of radioactive compounds.

7

## II. No Judicial Admission Was Made By Georgia Power's Counsel.

Plaintiffs assert that Georgia Power made a "judicial admission" that if the word "uranium" disappears from the Complaint, then the lawsuit is no longer subject to removal under the Price Anderson Act. (Plaintiffs' Motions for Remand, *Cass* Dkt. 5 at 7-9.) This attempt to invoke the judicial admission doctrine misses the mark. A judicial admission is a formal concession of fact that, where made unequivocally and unambiguously, takes the conceded fact out of contention. *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001); *Kleiman v. Wright*, No. 18-cv-80176, 2020 U.S. Dist. LEXIS 258836, at *30 (S.D. Fla. Nov. 17, 2020). Here, the jurisdictional question before the Court is a question of law, which is not subject to the judicial admission doctrine. *Kleiman*, 2020 U.S. Dist. LEXIS 258836, at *30. Moreover, subject matter jurisdiction is this Court's power to adjudicate a case, and questions of federal subject matter jurisdiction cannot be waived or forfeited. *Deroy*, 963 F.3d at 1310-11 (federal court's subject matter jurisdiction confirmed even where a plaintiff attempted to "explicit[ly] disavow federal jurisdiction" in the allegations of her complaint).

## CONCLUSION

As with the Monroe I Cases, the Court has original jurisdiction under the Price Anderson Act. Therefore, Plaintiffs' Motion to Remand should be denied. In the alternative, Georgia Power respectfully requests limited jurisdictional discovery to confirm the factual bases of these Plaintiffs' claims, namely that they, like their neighbors in the Monroe I Cases and *Arwood*, allege personal injury and/or property damage based on exposure to the hazardous, toxic, and radioactive properties of uranium.

Respectfully submitted this 6th day of May, 2022.

**ALSTON & BIRD, LLP**

*/s/ Meaghan G. Boyd*
Meaghan G. Boyd
Georgia Bar Number 142521
Meaghan.boyd@alston.com
Douglas S. Arnold
Georgia Bar Number 023208
Doug.arnold@alston.com
Jenny A. Hergenrother
Georgia Bar Number 447183
jenny.hergenrother@alston.com
Lee Ann Anand
Georgia Bar Number 004922
leeann.anand@alston.com
Sara M. Warren
Georgia Bar Number 966948
sara.warren@alston.com

One Atlantic Center
1201 West Peachtree St.
Atlanta, Georgia 30309-3424
Tel: 404-881-7000

**JAMES-BATES-BRANNAN-GROOVER-LLP**

Duke R. Groover
Georgia Bar No. 313225
dgroover@jamesbatesllp.com
Lee M. Gillis, Jr.
Georgia Bar No. 217515
lgillis@jamesbatesllp.com

231 Riverside Drive
Post Office Box 4283
Macon, Georgia 31208
Tel: 478-742-4280

**ROBBINS ALLOY BELINFANTE LITTLEFIELD LLC**

Richard Robbins
Georgia Bar 608030
rrobbins@robbinsfirm.com
Josh Belinfante
Georgia Bar No. 047399

9

jbelinfante@robbinsfirm.com

500 14th Street, NW
Atlanta, Georgia 30318
Tel: 678-701-9381

*Attorneys for Defendant
Georgia Power Company*

# CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing Georgia Power Company's Response to Plaintiffs' Motions for Remand by filing the same with the Court's EM/ECF system, which will automatically serve all counsel of record.

This 6th day of May, 2022.

*/s/ Meaghan G. Boyd*
Meaghan G. Boyd
